at all, appellants Medeo Factoring et al, Apley, Daniel McDermott, U.S. Trustee. Arguments of 15 minutes to be shared by Appellants DeVegas, 15 minutes for Defendant, Swanson for the Appellant Co-Face. Are you dividing your time? Yes, Your Honor. I, Mark Swanson, for the Appellant Co-Face will take 8 minutes. Mr. Hene, who represents the Chapter 7 Trustee, Bruce French, would take 5 minutes. And if it's agreeable with Your Honors, I would take the remaining 2 minutes for rebuttal. Thank you. Your Honors, this case cuts to the very core of the integrity of the bankruptcy system in this country. It's a rare and unique case where the bankruptcy system failed. You had a court finding of gross negligence against the original Chapter 7 Trustee. This created a hopelessly conflicted original Chapter 7 Trustee, where he was in a position to determine whether he should bring malpractice claims against himself and his law firm. But we're not really here to consider what's fair and what's not fair. We're here to determine what the statute provides, right? That's true, Your Honor. And one of the policies underlying the statute is fairness and equity to creditors. Are you thinking that Congress just made a mistake when it omitted Chapter 7? Your Honor, what we're here It defined the word including in Section 1023 of the Bankruptcy Code to mean not limiting. This issue has come before this court twice. It came before the court in the Floelizer case, and it came before the court in the Worthington cases. In each of those cases, you had litigants, like the Section 503B, that the applicants could not be awarded those expenses. But that statute, I understand that including and included and those words are not limiting, but Congress specifically put in references to Chapter 9 and Chapter 11 reorganization statutes. 7 is not a reorganization statute, and so why should we assume that, because these two, these chapters rather, are slightly different, why should we assume that by inference or whatever that Congress intended 7 to be included or did not specifically mean to exclude it? Your Honor, from the very beginning of this claims in Chapter 9 and Chapter 11 cases. What we said, and what I was getting to earlier, is that here you had a bankruptcy system fail. The parties that were charged with administering the case who would have been awarded administrative expenses under Section 503B were the United States and the original Chapter 7 trustee. Those parties failed to administer the bankruptcy case. COFIS, a creditor, was the party that ended up administering the case. At its very core, what an administrative expense is under Section 503B is compensation for administering the case. But I guess I just don't understand how we can read 503B3D and not find that Chapter 7 was meant to be excluded. Chapter 7 was never obviously addressed in 503B3D. Right, so the question is not what constitutes an administrative expense. The question is under what chapters are administrative expenses recoverable. Sure, and Section 503B, which we moved under, clearly applies to Chapter 7, 9, 12, 13. It applies to all of the chapters. There's nothing, and I don't think anyone cited a case, which says that a party cannot be awarded an administrative expense under Section 503B for under 503B3D, and Chapter 7 is not referenced. Your Honor, I would disagree that the category of expenses that we're talking about are those that are just specifically under Section 503B3D. Did COFIS make a substantial contribution in this case? Of course it did. Did it make an extraordinary contribution? It certainly did. Did it administer the case? Yes. Just because COFIS made a substantial contribution doesn't necessarily mean that that is the only section that you can look to. Okay, but you know, under rules of statutory construction, we are to construe statutes in a way that upholds a statute or doesn't render some part of that statute meaningless, and if we adopt your interpretation, and I understand you keep saying, well, we're not looking only to 503B or whatever, and you'll tell us eventually what you are looking to, but if we adopt your interpretation, don't we, in fact, render 503B3D meaningless? No, I don't think it renders 503B3D meaningless. In the Worthington and Floelizer cases, this Court was confronted with issues where Congress in Floelizer, Congress provided for taxes, fines, penalties. The argument was, well, interest was not included, thus Congress must have meant not to allow creditors' interest. This Court rejected that argument. This Court said including means including. Just because we might think Congress intended one thing, we actually have to look at the words of the statute, we have to look at the word include, we have to see that Congress specifically defined that word in Section 1023, and we need to enforce that word. And it was the same thing in the Worthington case, where official committee expenses, parties were arguing, those cannot be reimbursed. If you look at Section 503B3D, it provides for substantial contribution claims other than for members of official committees. Argument in front of this Court, well, that means Congress said we cannot provide expenses for official committees. This Court said no. This Court said we're going to look at the word including, we're going to see that Congress specifically defined that word including, and we are going to enforce Congress' intent. But in that case, there was no, for instance, a statute that said committee work can be reimbursed, but only these types of committees. Well, it said substantial contribution claims can be reimbursed other than for official committees, so I don't think we're too far from where we are in this case. You had the argument that because something was referenced and all other things must be excluded, Congress must have considered those things. And I think these Court's conclusions in the Floelizer and Worthington cases fit well with the Radlax decision. In Radlax, you had a Court which said we need to apply the general specific canon unless there are textual indications which point the other direction. Here, we not just have a textual indication, we have an actual statute, an actual statute that says including means not limiting. Thank you, Your Honor. Well, I wanted to ask you, before you go, what is the strongest case that you would cite to us that you believe supports your position or gives us the authority to grant the relief that you're asking? Sure. Your Honor, I would start with the Floelizer and Worthington cases. And there are a number of other lower court decisions which have granted administrative expenses in situations such as this one. In Chapter 7 cases? In Chapter 7 cases. I know that your light is on, and I ask you for your strongest. You've given me a couple. I'm assuming those lower court cases are in your brief. They are in my brief, and I can find them for you. The matter of Zeta, which was a bankruptcy case, and there are several others that are cited in my brief. Thank you. Good morning. May it please the Court, my name is Bill Henné, and I represent the successor trustee, Bruce French. Why couldn't the successor trustee just do what the plaintiffs did, what the creditors did? Well, all the things that the creditors did occurred in order to disqualify, to remove, the then trustee. Once there was a motion, there was a trial that the creditors represented themselves, they introduced substantial evidence, the court disqualified, removed the former trustee. Okay, is it possible, I'm asking this out of complete ignorance, is it possible for a successor trustee to, in effect, say, I ratify all of that, it was done for the estate, I will pay the attorney fees because it was done so that I could be here and do this? Yes, well, that's in fact what happened. They applied to the trustee to approve the expenditures. But I mean, I'm not, they applied under this section, they applied for it to be an approved expenditure, I'm asking something different. Whether you as trustee could step in and say, this sort of retrospectively, these, I am saying that these attorneys were representing not the creditors, but the estate. Sort of, and therefore, you don't have to apply for expenses, these are my expenses. The same way that the first trustee would have, if the first trustee had filed the lawsuit, right, and recovered, decided that he was going to sue his own firm and recovered, the estate would pay the attorney fees, right? Okay, so that's what I'm asking, whether, when you step in, you can look and say, well, this was really done for me, and so I'm paying it. I guess I'm uncertain, Your Honor, whether there is some mechanism to allow that other than what happened here, which is that we recommended the approval, and of course the court, I mean, we can't spend any money unless the court says it's okay to spend any money. So, the interest that Mr. French has as the successor trustee, as a long-time academic in the world of bankruptcy, as a man who has been a trustee for 30 years in the Northern District of Ohio, is in encouraging and incentivizing creditors to be more actively involved in the bankruptcy process. These creditors here, who were before your court, are models of those who are active in protecting not just their own interest, but in the interest of the estate. But again, isn't that a policy argument, and isn't that an argument, if it's going to be made, has to be made to Congress? Nope. It is a policy argument, but it's not an argument for Congress. It's an argument for the bankruptcy judge. It's an argument for the bankruptcy judge to use the powers that exist within the statutory system. There is, of course, 105. But the bankruptcy judge is limited by the statute itself. No. Absolutely not in this particular case. The argument that 503 B.D. 9 is limiting in Section 7 is a total misunderstanding of the statute. It doesn't say only. Your Honor said only. I think your Honor said the word only. But the statute says only this is authorized. That's not what it says. It says these kinds may be reimbursed, but it says at the very beginning of the whole thing, the including word. And if we are going to analyze a statute, we can't ignore the word including. If the statute had said only, we wouldn't be here. The U.S. Trust, I'm sorry. Going back to the point you made right now, I know you said we have to look at including, but as I said before, when we're looking at the statute that mentions specifically Chapter 9 and Chapter 11, you're saying it's okay for us to read into that based on including 7, 12, I don't know, I can't imagine 13, but just read all of them in there. That can't be right. No, I don't think that's necessary, and that's not really what we're asking. We're not asking you to change the wording of 9, of 3.D. 9. We're saying that under 503 B., that the very introduction allows for a whole range of administrative expenses. But that would render, though, the provision that specifically refers to the other chapters, it would render it completely superfluous in the statute, would it not? No, may I suggest that if Congress has identified a standard to use in Chapters 9 and 11, substantial contribution. A bankruptcy court, in the exercise of its discretion under 503 B., can award administrative expenses on some other standards, higher standards, maybe lower standards, in things that are not specifically controlled by 9. And that's what we're suggesting here, is that the bankruptcy judge should have exercised his discretion under these special circumstances to award it in 7. But again, if that's the case, then the bankruptcy judge would have the authority to exercise that discretion as it relates to the other chapters without having to have it written into the statute, correct? The other chapters meaning 7? Right, no, the enumerated chapters. Right, 9 and 11? Right. Well, no, then you really would have a rad lax problem. Then you really would have a general, that someone is trying to get to overrule a specific. We're not suggesting that in a 9 or 11, that you can use some other standard than substantial contribution. You couldn't do that. That really would be the general, can't be, excuse me, the other way around. The general would be trumped by the specific. But here, there is no specific that controls 7. Only if you interpret Congress's intent in structuring the statute to mean only 9 and 11 can you get administrative expenses for a creditor. Then you would come to that result. But that isn't what it says. So tell me again why we shouldn't interpret it that way. You know, you mentioned 105 again, but that's general equitable powers. So tell me again how you get to the position that you're asserting that provides you a basis for relief. Sure. Let me start by going back to the question that Judge O'Malley asked at the very beginning, which was, are we here to decide what's fair? Fair is important in this case because, ask yourself, did Congress intend to exclude 7? It included 9 and 11, but is there any reasonable reason to suppose that in this, Congress meant to say only. Should we rewrite, should you, excuse me, rewrite 9 to exclude 7? It doesn't say exclude. Earlier on, it just says here's a list of things that are all part of 503B. But it's not exclusive. And so the fairness comes in by saying, shouldn't the bankruptcy court have the authority, particularly in this kind of circumstance, to reimburse creditors for doing the most important thing they can do, which is uphold the integrity of the system. Sure, it helps them, but it helps all the other creditors and it helps the estate. In this case, they spent, what, about $160,000? Is that what they're asking for reimbursement? Yes, $165,000. And how much did they recover? Okay, they were not the ones who were recovering. They got the judge to remove the existing trustee. We were appointed a successor trustee. Using their research and analysis, we brought four adversary complaints. We then settled them and brought in about $1 million. And you paid about $600,000 in attorney fees, right? Yes. It was not an easy case. And they got about 50% of the balance? Yes. I think that's about the percentage that they have, yes. And all of that is something that you would say the judge can take into account, but he has the ability to take it into account? Yes, Your Honor. Through a combination of, you know, if needed, 105, but 503B before you get down to D9. Thank you. May it please the Court? I'm Cameron Golan on behalf of the United States Trustee. There's no plainer language in the Bankruptcy Code from Section 503B3D. It specifically limits recovery for substantial contribution to Chapter 9 and Chapter 11. No, it doesn't. It says, yeah, that section says that we allow this in those two chapters, but it doesn't say only those chapters. And there is an overall provision that very clearly is not exclusive. I mean, I understand you can make the argument that because it specifically says it, we shouldn't allow it in this case. But, I mean, bankruptcy is essentially equitable, and it's uncontested that they spent a significant amount of money that eventually inured to the benefit of the estate. So, I mean, why shouldn't it be allowed? There's no dispute they made a substantial contribution, and there's no dispute that the word only is not in 503B3D. However, 503B3D is one of only two sections of 503 that limits recovery to certain chapters. So Congress knew how to limit it if they wanted to. It's because they made a substantial contribution that their request for administrative priority is governed by 503B3D. But that only allows for it in 9 and 11, which this case is. Okay, well, let's say they made an extraordinary contribution. We won't use the language from that section. They made an extraordinary contribution. They jumped into the void. They acted where no one else would act. You could call it an extraordinary contribution or a super great contribution, but it's all the same thing. We made a contribution. We brought in funds for creditors. That type of request is clearly governed by 503B3D, substantial contribution by any other name. Why would Congress – you want us to assume that Congress really meant only. So why would Congress mean that? The U.S. Trustee is sort of refrained from even addressing that in the briefs because the statute itself seems plain. Our belief is similar to what Judge O'Donnell was saying earlier, that those, Chapter 9 for municipalities and Chapter 11, those are primarily reorganization statutes. There can be some liquidating 11s, but they're primarily reorganization statutes. So in those instances, it would make sense to give some creditors a boon for making a substantial contribution to keep a municipality or a business ongoing. Those types of issues don't really come into play in Chapter 7. That's why I think it was excluded. On an expense such as this, Mr. Hanay says that these expenses were incurred to fundamentally uphold the integrity of the bankruptcy system. And where someone has made a substantial contribution for the reasons he's articulated, how does the Code permit those expenses, I guess, to be compensated? I mean, is there anywhere that allows that? Can you get it under some other chapter? Can you get it under some other construction? Not that I'm aware of, Your Honor. They had a financial incentive, substantial financial incentive, as the lower courts called it, to bring an action like this. And their compensation for that is the 50 percent of the net proceeds that they brought in. Other than that, I'm not aware of another section. It's not entitled to an administrative expense priority, though. No, Your Honor. There's nothing that would provide for that. Could the trustee have paid those fees directly? Simply saying, if I had been appointed, I would have done exactly this. Now that I'm appointed, I recognize that these are legitimate expenses of the bankruptcy of state. I assume if he wanted to be nice and generous, he could have paid those. But there's no specific code section that I'm aware of that would require him to make those payments. And the court asked, too, about the amount. It's around $164,000, $165,000. $75,000 was incurred before the new trustee was appointed. The remaining, approximately $90,000, was incurred after. I'm sorry, I'm not hearing you. $75,000 was incurred before the new trustee was appointed. So the balance was incurred after. And that's on page 19 of the transcript of the bankruptcy court hearing. Okay. So why didn't he pay it? Why didn't the new trustee pay? Certainly the new trustee at that point could have paid the attorney fees, right? He could have said, I'm substituting in, you're my counsel now. He could have employed them, I suppose, yes. And then maybe under 503b3b, they could have had an administrative priority that way. That didn't happen here. Sorry. That was along the lines I was asking for. The cases that COFA says are its strongest cases, in my view, have almost no applicability here at all. Well, what about, I guess it's the Worthington case, what about that? I mean, if the statute says a certain type of committee can be paid, isn't that analogous to this case? I don't think so because Worthington's point was the statute is silent. This court determined that it was silent in regard to official committees and determined that the phrase that was in the code applied to unofficial committees. So, therefore, it's silent, silent on official committees, so we can. Why couldn't we say it's silent as to Chapter 7? Well, it's not silent as to a substantial contribution. But it was silent, I don't see why they're not analogous. I mean, it's not silent as to committees, right? It speaks to committees, and it says official committees, right, or unofficial committees. The code as it existed then was silent as to official committees. Right, but it was not silent as to committees. As to unofficial committees, correct. Right, so it spoke to committees, and it told you which committee's actions can be compensated, right? It said unofficial committees, right, under certain circumstances could. But it was silent as to official committees. But I don't see why that is not the same thing as this. It tells you which chapters, it tells you that you can, for the two chapters, you can compensate for substantial contribution. It's silent on Chapter 7. The same thing, it told you that you could compensate for unofficial committees. It was silent on official, right? Because only two sections refer to specific chapters, there seems to be a very strong indication that Congress meant to exclude Chapter 7. They could have just said, who makes a substantial contribution in a case, period. But they said in a Chapter 9 or Chapter 11. The focus for the U.S. trustees is that it's not silent as to a substantial contribution. This is a substantial contribution, then it says who can apply for administrative priority. But maybe it is the case that they didn't want them all treated the same. For certain chapters, there's a presumption that you'll get compensated. All you have to do is you go in, you meet that standard, and you get your compensation. Chapter 7 is different. You're not entitled to it just because you do this. You can't say, I made a contribution, give me my money. But that's very different from saying that the court is forbidden from giving you the money if you show that it's not just that you made a substantial contribution, you did more. It was reasonable, you stepped in where people dropped the ball. I mean, all sorts of things. The court could look at this and go, look, you know what? I hear what you're saying. You did a good thing. But in my mind, it's enough that you got more money. And say that's it. I don't want to give it to you. But that's very different from saying I don't have discretion to give it to you. I'm not sure what the reference to Chapter 9 and Chapter 11 would mean if a bankruptcy court could do that just because it seems fair or because it seems like a creditor did a really great job. Putting aside my view that we're not supposed to be pursuing policy here, can you conjure up a rationale why 7 would be excluded from this, given that the whole point is that you want to encourage this sort of self-help? I do believe 7 was excluded because it's primarily a straight liquidation chapter. And it wouldn't make sense to encourage that sort of race to the courthouse in cases that flow through the system in great volume, and they're almost always liquidation cases. This is not an involuntary liquidation? Pardon me? This was not an involuntary liquidation? Well, the case started as an involuntary. But not filed by this particular creditor? No. Okay. But, you know, under what you just said, in a liquidating bankruptcy, the trustee is there for the very purpose of gathering all of the assets, wherever they are, and maximizing the benefit to creditors. And so if you have a trustee in place who is not doing that job, that trustee is undermining the very function and thwarting the very function of the whole bankruptcy process. So I think that argues against the point that you just made as to why that would be a basis for not allowing or granting the expense. Because if the trustee here is almost self-dealing, that's certainly against the fundamental purpose of the bankruptcy court, because the purpose is to get the trustee to garner all the assets, as many as they can, and maximize the value to creditors, which is what the successor trustee did. So how does that support what you just said? When the mistrial occurred in 2005, from that point, any party could have moved under Section 324 to have him removed from this case. But nobody did. It's true, the U.S. trustee didn't. Neither did COFACE. Neither did any other creditor. And for years, 2006— Are you saying the U.S. trustee dropped the ball? I shouldn't answer that, but never mind. Don't answer that. For 2006, 2007, and 2008, Mr. Shapiro remained in place, doing normal trustee work, settling claims, objecting to claims, and no one objected. And the case was at what appeared to be the almost conclusion then when the U.S. trustee was contacted. COFACE had been involved in the case since 2003, had the most knowledge, and 324 allows them, or even the Bankruptcy Court, to remove a Chapter 7 trustee. And it's true, no one did that, so they acted with their own financial interest in mind. And it's important to remember they do reap a large benefit here. So all the talk about policy, inequity, the lower courts said two things. First of all, there is no great inequity here because they're getting a big financial reward. And two, any inequities or perceived inequities that may exist are for Congress to address, not this court. And why did the U.S. trustee not take any action? My understanding is it was the end of the case. No one had said anything for three years after the mistrial while Mr. Shapiro was still acting as trustee. And we, in essence, said when contacted, you may take whatever steps you deem necessary. 324 lets you do that. But even though it was close to the end of the case and bankruptcy, even though the case has ended under Section 350, the trustee can always go out, if the trustee learns, of additional assets that benefit the body of creditors that can go out and move to reopen and still administer those assets for the benefit of creditors, correct? Correct. All right. I will just conclude that nothing the U.S. trustee did or didn't do, however, changes the clear language of 503B3D. I see I have five seconds, so thank you very much. Thank you. I just wanted to hit on a few points here. Congress knows how to express its intent. Look at Section 503C. Section 503C, which follows Section 503B, says notwithstanding subsection B, there shall be neither allowed nor paid, and it lists a number of expenses. It could have very easily said, substantial contribution claims in Chapter 7 cases shall neither be allowed nor paid. It lists a number of other ones right there, but it didn't do that. In the Rule 28J case, or G case, that the U.S. trustees submitted last week, it said in Chapter 7 and 13, this shall be the valuation standard. This shall be the valuation standard. There is no language like that in Section 503B3D. In the two other cases before you, Flo Lizer and Worthington, you had legislative history which, frankly, pointed against allowing these administrative expenses. You have no legislative history. There's nothing in the record to indicate that Congress clearly intended to exclude Chapter 7. Furthermore, Your Honors, we're not just seeking a substantial contribution claim. What we did was we administered the bankruptcy case. The case trustee, the U.S. trustee, they dropped the ball. At its very core, what administrative expenses are are expenses for administering the case, and that's exactly what we did. They would have been compensated for administering the case if they would have performed their jobs, but they didn't do that. Finally, Your Honor, this was not a case we cited in our brief, but it's a very famous Supreme Court case. It's Redding-Covey-Brown, 391 U.S. 471. The court looked at the policy underlying Section 503B. It was a pretty simple case where you had a fire at a bankrupt company's headquarters, and there were victims of the fire, and they applied for administrative expenses. The trustee in that case said, no, we're not going to allow administrative expenses. The two purposes underlying the bankruptcy code are to facilitate a rehabilitation of insolvent businesses and preserve a maximum amount of assets for distribution. What the Supreme Court said, it said, trustee, in our view, you've overlooked one important and here decisive statutory objective,  Thank you, Your Honors. Thank you.